# O'Donnell, Appellant, *v.* Director General of R. R.

*Workmen's compensation—Railroads—Interstate commerce—Interstate train—Break in continuity of service.*

1. Where intrastate and interstate actions are mingled, or at times alternate, there is no separation; the interstate feature predominates and by it must the question be judged.

2. Employment follows interstate transportation, and begins when the workman on a carrier's premises makes a forward move

to serve in that traffic or employment, and ends only after he has completely dissociated himself therefrom.

3. If there be an assertion of the claim or remedy growing out of an occurrence in which there are constituents of interstate commerce, the burden of explanation and avoidance is on him who asserts the claim or remedy, not on the railroad company to which it is directed.

4. Where an engineer is fatally injured while taking an engine from one point in the state to another, and it appears that the engine in question was to arrive at the second point about ten o'clock in the morning, and was definitely assigned to an interstate passenger train at five o'clock in the afternoon, and it also appeared that the engineer after delivering the engine at the second point was to assist in moving with another engine an interstate freight train, the engineer at the time of his injury was engaged in interstate commerce.

5. The fact that during the interval from ten o'clock in the morning to five o'clock in the afternoon, the engine in question might possibly be assigned to other work, is immaterial.

*Workmen's compensation—Railroads — Interstate commerce — Contractual relations under state laws superseded by Federal Act.*

6. The Federal Employers' Liability Act excludes the jurisdiction of state workmen's compensation acts in all matters relating to interstate commerce, including all the direct and indirect effects thereof, whether these, when applicable, create contractual relations or otherwise.

7. It is beyond the power of the states to interfere with the operation of the Federal Act, either by putting the carriers and their employees to an election between its provisions and those of a state, or by imputing such an election to them by means of a statutory presumption.

8. Where a railroad employee is killed while engaged in interstate commerce, his widow cannot set up a claim for compensation under the state act, because of a contractual relation between the deceased and his employer arising from the fact that neither had rejected the act, and that this contractual relation could not be overcome by the defense of interstate commerce.

Argued February 14, 1922.   Appeal, No. 258, Jan. T., 1922, by plaintiff, from judgment of C. P. Schuylkill Co., Sept. T., 1921, No. 500½, sustaining decision of Workmen's Compensation Board, in case of Pauline O'Donnell v. Director General of Railroads, operating Lehigh Val-

ley Railroad Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from Workmen's Compensation Board. Before BERGER, J.

The opinion of the Supreme Court states the facts.

Judgment for defendant. Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*Roger J. Dever,* for appellant.—The movement of engine No. 1676 was not an interstate commerce movement: Chicago, etc., R. R. v. Harrington, 241 U. S. 177; Minneapolis, etc., R. R. v. Winters, 242 U. S. 353; Erie R. R. v. Welsh, 242 U. S. 303; Anderson v. Steel Co., 255 Pa. 33.

The employer's contract in this case was to pay to the employee or his dependents according to the schedule contained in the Pennsylvania Workmen's Compensation Act and the contract being complete, the employer cannot be relieved of its obligation by asserting that the accident happened in interstate commerce.

*Otto F. Farquhar,* for appellee.—The work in which decedent was engaged, at the time of his death, was directly and closely connected with interstate commerce: North Carolina R. R. v. Zachary, 232 U. S. 248; Scanlon v. Payne, 271 Pa. 391.

Even though decedent was on his way to perform work of interstate character, if it be considered in that light, he would be engaged in interstate commerce: Erie R. R. Co. v. Winfield, 244 U. S. 170; Knorr v. R. R., 268 Pa. 172; N. C. R. R. v. Zachary, 232 U. S. 248; Hogarty v. Ry., 245 Pa. 443.

Liability of an employer for compensation under the Pennsylvania Workmen's Compensation Act, if he fails

to reject liability therefor in the manner prescribed by said act, exists by reason of a statutory presumption.

The question raised by appellant has been passed upon and finally determined by the Supreme Court of the United States: Erie R. R. v. Winfield, 244 U. S. 170; N. Y. C. & H. R. R. R. Co. v. Tonsellito, 244 U. S. 360.

Opinion by Mr. Chief Justice Moschzisker, March 20, 1922:

The plaintiff in this case, Pauline O'Donnell, widow of John J. O'Donnell, was denied an award under the Workmen's Compensation Act, on the ground that her husband's death had come about by an accident occurring in the course of interstate commerce; the referee, the board and the court below agreed in this conclusion; judgment was entered for defendant, and plaintiff has appealed.

Defendant railroad is a common carrier, engaged in intra- and interstate commerce; it operates a train from Pittsburgh, Pa., to Phillipsburg, N. J.; on June 1, 1920, engine No. 1676 was assigned, by proper authority, to haul this train from Mt. Carmel, an intermediate Pennsylvania point, to its destination; plaintiff's husband was directed to run the engine from Hazleton, Pa., where it was stationed, to Mt. Carmel, Pa., where it was needed for the purpose of its assignment, and, after its delivery, he was to take charge of another engine, attached to a freight train containing interstate shipments; engine No. 1676 left the track, on the run from Hazleton to Mt. Carmel, thus causing the injury which resulted in O'Donnell's death.

The derailed engine was due to arrive at Mt. Carmel at ten o'clock in the morning; and, in regular course, would not be required to haul the train to which it was assigned until about five o'clock that evening. Plaintiff contends that this break in the time, leaving room for a change of assignment, and the fact that, when the accident happened to her husband, the train to which his engine had been assigned was being drawn from Phillips-

burg to Mt. Carmel by another locomotive, which would
have had to be relieved from service before engine No.
1676 could be attached to the train in question, showed,
when given due weight, that the latter engine was not in
interstate service at the time of its derailment.   In dis-
posing of these contentions, the compensation board cor-
rectly states: "Engine No. 1676, at the time it was being
driven by O'Donnell, had a definite assignment to inter-
state commerce, and O'Donnell himself had definite or-
ders to deliver the engine at Mt. Carmel and then to
assist in the movement of an interstate freight train,
[therefore] what O'Donnell was doing at the time of
the accident was certainly an incident of interstate com-
merce."

Numerous decisions of the Supreme Court of the
United States sustain the view of the board; which, on
appeal, was adopted by the common pleas: see P. & R.
Ry. Co. v. Polk, 41 U. S. Sup. Ct. Reporter 518, 519;
P. & R. Ry. Co. v. DiDonato, U. S. 41 Sup. Ct. Reporter
516, 517; Southern Pacific Co. v. Industrial, etc.,
Commission, 251 U. S. 259, 263; Kinzell v. Chicago, etc.,
Co., 250 U. S. 130, 133; P. & R. Ry. Co. v. Hancock, 253
U. S. 284, 286; Erie R. R. Co. v. Collins, 253 U. S. 77, 83;
Erie R. R. Co. v. Szary, 253 U. S. 86, 89; Shanks v. D.,
L. & W. R. R. Co., 239 U. S. 556, 558; Pederson v. D., L.
& W. R. R. Co., 229 U. S. 146, 151.

In the recent case of Koons v. P. & R. Ry. Co., 271 Pa.
468, 470, Mr. Justice KEPHART, speaking for this court,
says: "Where intra- and interstate acts are mingled, or
at times alternate, there is no separation; the interstate
feature predominates and by it must the questioned act
be judged.   'To separate duties [of an employment] by
moments of time or particular incidents of its exertion
would be to destroy its unity......This service and the
other service cannot be separated in duty and responsi-
bility': P. & R. Ry. Co. v. DiDonato, 41 U. S. Supreme
Court Reporter 516.   Employment follows interstate
transportation and begins when the workman, on a car-

rier's premises, makes a forward move to serve in that traffic or employment and ends only after he has completely dissociated himself therefrom." See also P. & R. Ry. Co. v. Polk, 41 U. S. Supreme Court Reporter, 518, 519, where Justice McKenna says: "We cannot accede to the view there is a presumption that duties performed on a train constituted of interstate and intrastate commerce were performed in the latter commerce. The presumption, indeed, might be the other way. It is to be remembered it is the declaration of the cases that if there is an element of interstate commerce in a traffic or employment it determines the remedy of the employee. Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; New York Central R. R. Co. v. Winfield, 244 U. S. 147, 37 Sup. Ct. 546; N. P. Ry. v. State of Washington, 222 U. S. 370, 375, 32 Sup. Ct. 160, 56 L. Ed. 237......It would seem indisputable, therefore, if there be an assertion of the claim or remedy growing out of an occurrence in which there are constituents of interstate commerce, the burden of explanation and avoidance is on him who asserts the claim on remedy, not on the railway company to which it is directed, and there is nothing in Osborne v. Gray, 241 U. S. 16, 36 Sup. Ct. 486, 60 L. Ed. 865, in opposition. Indeed, the court was asked in that case to do what the referee and the Supreme Court in this case have done; that is, to assume to know things of which there is no evidence."

The Polk and DiDonato cases are the most recent decisions of the Federal Supreme Court touching the questions here involved, and they in effect rule the facts at bar. There can be no doubt that plaintiff's husband was engaged in "a forward move to serve in" interstate commerce, from which he had not dissociated himself prior to the fatal accident. Even if appellant's contention,—that engine No. 1676, after arrival at Mt. Carmel, might have been used, during the day, as auxiliary to the hauling and transferring of intrastate traffic,

—be correct, nevertheless, decedent's purpose, in taking the engine to such point, was no less than a joinder of interstate with intrastate objectives, and, under the authorities above discussed, this would not serve plaintiff on the present appeal.

Plaintiff further contends that, even if the accident which caused her husband's death did happen in interstate commerce, she is, nevertheless, entitled to recover under our compensation act, because this statute creates, according to her contention, a contractual relation between employer and employee of a character which the former cannot overcome by setting up the defense of interstate commerce. She bases this contention on article III, section 302 (a), of the Workmen's Compensation Act of 1915, P. L. 736, wherein it is provided that, "in every contract of hiring made after" December 31, 1915, "and in every contract of hiring renewed or extended by mutual consent, expressed or implied, after said date, it shall be conclusively presumed the parties have accepted" the "elective compensation" provided for in the act and "have agreed to be bound thereby," unless they file the proper rejection thereof.

We can no more sustain plaintiff's contention on this branch of the case than on the one first discussed. The only agreement for death compensation, if any, is the one which arises out of the application of the state statute, and, if such an agreement exists, it is through the "presumption" the act undertakes to create; but the decisions of the United States Supreme Court are uniformly to the effect that the Federal Employers' Liability Act,—representing, as it does, a power exercised by Congress,—excludes the jurisdiction of state workmen's compensation acts in all matters relating to interstate commerce. That is to say, these decisions establish the act of Congress as superseding the laws of the states upon all matters within the scope of the federal statute, and so long as it remains upon the books, in cases involving accidents happening upon interstate railroads to em-

ployees engaged in interstate commerce, such state laws as the compensation acts must be viewed as though non-existent,—including, of course, all the direct and indirect effects thereof, whether these, when applicable, create contractual relations or otherwise.

In Erie R. R. Co. v. Winfield, 244 U. S. 170, 172, 173, Mr. Justice VAN DEVANTER said: "The questions presented for decision are: First, whether the Federal Act is regulative of the carrier's liability or obligation in every instance of injury or death to one of its employees in interstate commerce, or only in those instances where there is causal negligence for which the carrier is responsible.......Third, whether by reason of the state statute the carrier became bound contractually to make compensation in this instance, even though it came within the Federal Act." In ruling these questions in favor of the supremacy of the federal law, he further said: "There was no express agreement in this instance and there is no basis for regarding the carrier as in any way bound by [the state compensation] statute, save as it provides that an agreement to be bound by it shall be presumed in the absence of a declaration to the contrary. But such a presumption cannot be indulged here, and this for the reason that, by the Federal Act, the entire subject, as respects carriers by railroad and their employees in interstate commerce, was taken without the reach of state laws. It is beyond the power of any state to interfere with the operation of that act, either by putting the carriers and their employees to an election between its provisions and those of a state, or by imputing such an election to them by means of a statutory presumption." See also New York Cent. R. R. Co. v. Winfield, 244 U. S. 147, 149; N. Y. C. & H. R. R. R. Co. v. Tonsellito, 244 U. S. 360, 361; Pryor v. Williams, 254 U. S. 43, 46.

The assignments of error are overruled and the judgment is affirmed.