### McKAY v. MONONGAHELA RY. CO.
### No. 4201.

Circuit Court of Appeals, Third Circuit.

Oct. 8, 1930.

Robert D. Dalzell and Dalzell, Dalzell & McFall, all of Pittsburgh, Pa., for appellant.

Robbin B. Wolf, of Pittsburgh, Pa., Newcomb, Newcomb & Nord, of Cleveland, Ohio, and McCreery & Wolf, of Pittsburgh, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court entered on the verdict of a jury for the appellee, who was plaintiff below.

This was an action brought by the plaintiff, McKay, who was an employee of the defendant, to recover for injuries alleged to have been sustained as the result of a fall from an electric crane in defendant's railroad shops while both he and his employer were engaged in interstate commerce.

The case was tried to the court and jury, and a verdict was rendered for the plaintiff. A motion for a new trial was denied, and the defendant appealed to this court.

The real question here is the character of the plaintiff's employment at the time of the accident, whether he was engaged in interstate or intrastate commerce.

The principal business of the defendant is hauling coal from mines in West Virginia to Brownsville, Pa. At the time of the accident, and for a number of years prior thereto, the plaintiff says that he was an electrician employed by defendant at Brownsville, but that he was principally engaged in inspecting and making repairs to locomotives which had been

placed on the "outbound" tracks, where engines assigned to runs had customarily been placed before moving out to the main track, mostly for runs in interstate commerce.

About 40 or 50 feet from the "outbound" track was the "erecting shop," used for making heavy repairs to the engines. This contained an electric crane of sufficient capacity to lift an assembled locomotive. Any person who required the use of the crane got one of the electrical "gang" to operate it. The position of the operator of the crane was in a cage which was suspended from the beams of the crane about 40 feet above the floor.

On the day of the accident, the plaintiff was at work on a locomotive on the outbound track, and was requested to operate the crane to life a "pony truck." He reached the cage of the crane by means of a ladder attached to the wall of the shop, but, before he began the operation for which he was called, Macin, the erecting shop foreman, gave him a signal to life a locomotive from one track to another. In order to do this, a hook was fastened to each end of the locomotive, which was then raised and lifted over to and lowered upon the desired track. The hook on the rear end was disconnected from the locomotive, but the one on the front end remained attached with the front end of the locomotive slightly raised so as to permit the machinists to line up the wheels. With the engine in that position, the front end suspended, and the rear end down on the track, the crane could not be moved or used for other work. While the crane was in that position, there appeared to be nothing for the plaintiff to do in the cage.

He says that he then started to get down out of the cage, and go back to his work of inspecting the locomotives which had been assigned to duty, placed on the "outbound" track, and required electrical inspection before going out; that some of the locomotives were used exclusively in interstate commerce; that the track on which the locomotives were placed is a highway of interstate commerce; that he was an inspector of locomotives used in interstate commerce under Thomas H. Guard, "electrician foreman" of the defendant company; that in getting out of the cage he put his hand on a part of it, or upon some of its attachments, which had been electrified by an improperly insulated wire, and received a shock from it; that he lost his grip and footing in consequence, and fell 40 or 50 feet to the floor below, and was severely injured.

The defendant, on the other hand, says that the plaintiff at the time of the accident was not engaged in interstate commerce because at that time his work as operator of the crane was not completed, since he had not lifted the "pony truck" which he was first called to do; that the regularly kept records of the company show that the plaintiff's entire work was that of crane operator and not inspector of locomotives, and so the case does not come within the Federal Employers' Liability Act (45 USCA §§ 51–59), and should not, therefore, have been submitted to the jury.

It is admitted that, if the plaintiff was engaged in interstate commerce at the time of the accident, the judgment should be affirmed. But the defendant denies that he was. Interstate employment follows interstate transportation, and begins when a workman on the carrier's premises makes a forward move to serve in that traffic or employment. Under the evidence in this case, if the defendant had finished his temporary intrastate work on the crane and had started back to inspect locomotives on the outbound track to be used in interstate commerce when his hand came in contact with the uninsulated wire while getting out of the cage and caused the injury complained of, he was engaged in interstate commerce at that time. O'Donnell v. Director General of Railroads, 273 Pa. 375, 117 A. 82; Hines, Director General of Railroads, v. Logan (C. C. A.) 269 F. 105; North Carolina Railroad Company v. Zachary, 232 U. S. 248, 260, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Erie Railroad Company v. Winfield, 244 U. S. 170, 173, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662. So whether or not the plaintiff was engaged in interstate commerce at the time of the accident was a question of fact to be determined by the jury, and was so regarded by the learned trial judge, who charged it as follows:

"Now, in this case I would say to you, as a matter of law, that if William McKay was injured while he was operating the crane in this repair shop, that he was not engaged in interstate commerce. He would have failed to have brought himself within the Act. But if he had completely finished his work on the crane, and dissociated himself therefrom, and was on his way to inspect and repair an engine used in interstate commerce, then he would be engaged in interstate commerce. So the important part for you to determine is, was McKay injured while he was working

on the crane, or was he injured after he had left there and while going to an engine which was used in interstate commerce, to make repairs thereon. Now, you heard the testimony of McKay. You heard the testimony of others as to where he fell; you heard the testimony of witnesses to the effect that he did not know what caused the accident, or that he fell. It is for you to say, then, whether this plaintiff was engaged in interstate commerce at the time he was injured, and that burden rests upon the plaintiff to establish that he was engaged in interstate commerce."

The question on which this case turns was thus squarely presented to the jury, and its verdict settles the interstate character of the work in which the plaintiff was engaged when the accident occurred, provided the evidence is sufficient to support the verdict, and we think it is.

As to the time sheets, which are the "regularly kept records" to which defendant referred to show that plaintiff was a crane operator and not an inspector of locomotives, plaintiff says that they do not represent the facts; that he regularly inspected locomotives, but now and then operated the crane; that his time, however, was charged to the crane, regardless of where he worked. ▮ Whatever the actual facts may be, no mention was made of the time cards in the charge to the jury. No request was made of the judge to charge upon them. No exception was taken with reference to them. And so the finding of the jury on this point may not now be made a ground for reversal. Mercantile Mut. Insurance Company v. Folsom, 18 Wall. (85 U. S.) 237, 21 L. Ed. 827; Michigan Insurance Bank v. Eldred, 143 U. S. 293, 12 S. Ct. 450, 36 L. Ed. 162; Burbank v. Bigelow, 154 U. S. 558, 14 S. Ct. 1163, 19 L. Ed. 51; New York, L. E. & W. R. Co. v. Estill, 147 U. S. 591, 13 S. Ct. 444, 37 L. Ed. 292; O'Connell et al. v. United States, 253 U. S. 142, 40 S. Ct. 444, 64 L. Ed. 827.

The verdict of the jury shows that it did not believe that the time sheets recorded the facts. It was its duty to find the facts from all the evidence, and this it did.

After hearing all the evidence, the jury found that the plaintiff was engaged in interstate commerce when he was injured. The evidence is sufficient to support that finding.

The learned District Judge did not commit error at the trial, and the judgment is affirmed.