Backes, Appellant, *v.* Pennsylvania Railroad Company.

Argued April 22, 1938.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Clarence A. Patterson,* for appellant.

*John R. Bredin,* with him *Dalzell, McFall & Pringle,* for appellee.

OPINION BY PARKER, J., June 29, 1938:

The sole question involved in this appeal is whether the claimant's husband, Harry G. Backes, was at the time of his accidental death engaged in interstate transportation. Are his rights fixed by the Federal Employers' Liability Act or by the Pennsylvania Workmen's Compensation Act under which this claim is made? The referee and board found that decedent was not engaged in interstate transportation and on appeal to the court of common pleas the majority of that court were of the opinion he was so engaged. If the employee at the time of the accident was engaged in interstate transportation, not only does the federal act apply but a recovery may not be had under the state compensation act: *New York Central R. Co. v. Winfield,* 244 U. S. 147, 37 S. Ct. 546. The dissenting opinion filed in the court below suggests that a rule be adopted which is directly opposed to the decision in that case. On the question involved the decisions of the Supreme Court of the United States are controlling *(Mayers v. Union R. R. Co.,* 256 Pa. 474, 100 A. 967), and we shall endeavor to follow those decisions.

Harry G. Backes had been employed for a number

of years by the Pennsylvania Railroad Company as a "locomotive preparer" at the Allegheny engine house of the defendant company in Pittsburgh. It was his duty to see that a locomotive, when assigned for a particular service, was provided with fire and water and delivered on an outgoing track where it would be taken later by the crew designated to operate it. He took charge of the locomotives at the turntable and placed them on the outgoing track for the purpose of servicing them. As preparer, Backes did not do anything to the locomotive until such engine had been designated by number on a blackboard as being set apart for a particular run or yard service. The preparers worked in eight-hour shifts, the decedent's tour being from 2 to 10 P.M., E. S. T. He was engaged in this work on May 14, 1934, and was last seen alive between 9 and 10 P.M. on that day. His body was found on the evening of May 15 between 4 and 5 o'clock, lying in the ash pit. A watch which was identified as one taken from his body had stopped at 10:19 "with the hour hand firmly stuck to the dial." His wife testified that he kept his watch on daylight saving time. If this was the case the watch stopped at 9:19 E. S. T.

The referee found, among others, the following facts: "The last engine on which he was known to have worked was Engine No. 8014, which had been assigned on the blackboard, and, at the time he met his death the engine crew had not been called and had not yet arrived on the premises but, on the contrary, the engine still remained in the engine house and the assignment thereof was subject to cancellation by the engine house foreman or his subordinates." The board in its opinion also found as follows: "The record indicates that during the seven hours or more immediately prior to his death decedent had worked upon various engines, some of which were later used in intrastate commerce and some in interstate commerce. The last engine on which

he was known to have worked was engine No. 8014. This locomotive had been in the engine house for monthly inspection. The locomotive had been tentatively assigned on a blackboard in the engine house to an interstate commerce run. However, this assignment was subject to change. The engine crew for this locomotive had not yet been called nor had it arrived on the premises. There is no evidence as to the exact time at which the blackboard assignment of the engine was made."

The opinion of the board, the dissenting opinion filed in the court below, and the argument of appellant advance the proposition that Backes was not engaged in interstate transportation and engine No. 8014 was not so employed when the accident occurred since the engine had been withdrawn from all service for a period of four days for monthly inspection and had not yet been returned to service. The facts do not support the premise and the legal principle depended upon is not applicable.

Not only may an engine usually employed in interstate transportation be withdrawn from service so that one employed in making repairs upon it may not be said to be engaged in interstate transportation, but it may be laid up for other reasons and during such period those employed upon it may not be engaged in interstate transportation. In *Minneapolis & St. L. R. Co. v. Winters,* 242 U. S. 353, 37 S. Ct. 170, an employee, a machinist's helper, was engaged in making repairs to an engine in a roundhouse when injured. He brought suit under the federal act and was not permitted to recover. Mr. Justice HOLMES there said: "This is not like the matter of repairs upon a road permanently devoted to commerce among the states. An engine, as such, is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business

as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events." Also, see *New York, N. H. & H. R. Co. v. Bezue,* 284 U. S. 415, 52 S. Ct. 205.

The answer to the arguments urged is that they ignore the facts in the present case, which facts not only present a different situation than those in the Winters case, but involve principles which were recognized by Mr. Justice HOLMES in the Winters case as the basis for a different rule. The board found that the engine in question had been "assigned on a blackboard in the engine house to an interstate commerce run." Not only do such facts clearly appear, but the engine was taken, after the orders were posted, to the outbound track where it was provided with fire and water for that run, and at 11:59 P.M. of that day it actually made the run. The employment took on the character of interstate transportation when a forward movement was made in that class of transportation. The engine was not only definitely assigned to interstate service but it actually moved forward from storage to the performance of the assigned task. "Employment follows interstate transportation and begins when the workman, on a carrier's premises, makes a forward move to serve in that traffic or employment and ends only after he has completely dissociated himself therefrom": *Koons v. P. & R. Ry. Co.,* 271 Pa. 468, 470, 114 A. 262; *O'Donnell v. Director General,* 273 Pa. 375, 117 A. 82; *Mazzuco v. Penna. R. R. Co.,* 122 Pa. Superior Ct. 293, 186 A. 255.

In *North Carolina R. Co. v. Zachary,* 232 U. S. 248,

34 S. Ct. 305, 58 L. Ed. 591, a fireman, after inspecting, oiling, and firing his engine for an intrastate haul of a train containing cars that had come from another state, and before the engine was attached to the cars it was to haul, was killed by a switching engine while he was attempting to cross the tracks intervening between his engine and his boarding house. This was held sufficient to warrant a finding that the fireman was then engaged in interstate transportation. In other words, a forward movement had been made in the employment of the facility in such class of transportation. Now, the only difference between this case and the Zachary case is that here the locomotive was fired and watered and was also actually moved forward by the engine preparer, while in the Zachary case the oiling, firing, and inspection was by a fireman. In neither case was there a forward movement of freight or passengers. The engineer, fireman, and brakeman are not the only persons who take part in interstate movements of engines.

An attempt was made to distinguish the line of cases we have last cited by reference to a finding by the compensation authorities that the blackboard orders were subject to cancellation. Not only was there here no cancellation, but in our opinion it would not have affected the character of the employment if it had appeared that this engine had been assigned, the work had been done and the movements made that were shown here and before the engine was attached to the cars another engine had been substituted. To hold otherwise would be to make the test of the character of employment not the orders under which it was performed with a movement for the accomplishment of such orders, but the mere fact that the complete result contemplated was not accomplished. The interstate character of the employment on this locomotive was fixed when it was assigned to interstate service and a forward movement

in that service was made by moving it to the outbound track and firing and watering it.

It was not controlling that the crew had not appeared or been summoned at the time Backes was killed. We are not here concerned with the nature of the employment of the crew but with that of the preparer who was performing his part of a definite service. One part of the interstate movement was performed by the crew and another part by the preparer and his assistants.

The cases dealing with those employed in repairing tracks, bridges, and the like, those dealing with repairs made on facilities not being at the time employed in a particular classification of commerce, or those dealing with employees only remotely concerned with interstate transportation have no application here.

There is another legal question involved that requires consideration. While the fact finding bodies have made findings of fact to the effect that Backes last worked upon locomotive No. 8014, there was no specific evidence as to whether he had finished work on that engine or whether he was just waiting to take up other work. As to this feature we must rely upon inferences which are largely speculative. The board in this connection said: "It is likewise noteworthy that the ash pit was not so close to engine No. 8014 that claimant could have fallen from the engine into the ash pit. It seems more likely that he was walking alongside the ash pit and either tripped or attempted to jump across it consequently suffering the fall that caused his death."

Defendant called a witness, Carpenter, who stated that he climbed down from engine No. 8014 at 9:43 E. S. T., and that Backes then climbed on that locomotive. The fact finding bodies rejected this statement as to time and inferred that Backes was killed at 10:19 daylight saving time (9:19 E. S. T.), the point at which his watch stopped. However, it was found that the employee performed his last labor on this engine and

that his quitting time was 10 P.M. If he had been killed when leaving the premises recovery could not have been had under the state compensation law: *Mason v. Reading Co.,* 129 Pa. Superior Ct. 289, 295, 195 A. 754; *Erie R. Co. v. Winfield,* 244 U. S. 170, 37 S. Ct. 556. We must assume, as found by the board, that he was killed forty minutes before the end of his day's work. Even if he had completed his work on engine No. 8014 and, as the board likewise found, he had not taken up another task, it would seem that the interim would partake of the nature of the day's work as a whole, which was interstate, just as in the case of leaving work for the day. However, almost the exact situation was considered by the Supreme Court in the case of *New York Central R. Co. v. Marcone,* 281 U. S. 345, 50 S. Ct. 294. There the decedent was employed in a roundhouse in which there were thirty-two engine stalls adjacent to a turntable. His duty was to fill the grease cups and pack the journal boxes on engines while in the roundhouse for inspection. On the night of the accident his hours of duty were from 7 P.M. to 3 A.M. He had worked on fourteen engines, had used tools taken from an inspection wagon, and had lubricated and completed work on some of the engines. The last engine he worked on was No. 3835. At about 2:15 A.M. he was instructed by his foreman to work on engine No. 3835. At about 2.35 A.M., the decedent's body was found and there was no eye witness to the accident. The engine No. 3835 was used in hauling interstate trains and had not been withdrawn from service. The trial court submitted to the jury a question as to whether deceased had finished work on this engine and the jury found that he had not. Mr. Justice STONE in that connection said (p. 350): "But if we assume that he had completed the work a few minutes before his death, he was still on duty. His presence on the premises was so closely associated with his employment in interstate commerce

as to be an incident of it and to entitle him to the benefit of the Employers' Liability Act." That case is conclusive upon us on that branch of the controversy.

An attempt was made by appellant to distinguish the Marcone case by reason of the fact that locomotive No. 8014 had been withdrawn from service for four days for a monthly inspection and because it does not appear clearly in what class of transportation it was employed in its last previous run. Those facts were immaterial since it does appear, as we have heretofore shown, that it was actually returned to interstate service when Backes was employed in servicing it with coal, fire and water under orders to prepare it for a particular run in that class of transportation.

Notwithstanding the suggestion in the dissenting opinion and in the argument of appellant that this court should adopt a more liberal view in dealing with cases involving interstate transportation and our desire to give a liberal interpretation to the workmen's compensation laws of our state, we are bound by the law as enacted by Congress and as interpreted by the Supreme Court of the United States. The difficulty arises by reason of the fact that recovery under our Workmen's Compensation Law and recovery under the Federal Employers' Liability Act are not allowed upon the same basis. The latter act applies exclusively to cases involving negligence upon the part of the employer and modifies certain common law principles, particularly those dealing with contributory negligence and assumption of risk, while the basis of recovery under the compensation laws is not the negligence of the employer but the mere fact that he is employed. A liberal construction of the federal law in compensation cases, as is suggested by appellant, would have the opposite effect when employees seek to recover for injuries under the federal act. We cannot construe that act one way one day and differently the next day. This

subject had the careful consideration of the United States Supreme Court in the case of *New York C. R. Co. v. Winfield,* to which we referred at the beginning of this opinion. If a change in the law is desirable so that employees in interstate transportation may have the benefit of workmen's compensation laws, so called, relief should be sought from Congress.

Judgment of the court below is affirmed.