292

## LARKIN v. READING CO.
### No. 9.

District Court, M. D. Pennsylvania.
July 17, 1939.

George Kunkel and Walter Compton, both of Harrisburg, Pa., for plaintiff.

John T. Brady, of Harrisburg, Pa., for defendant.

JOHNSON, District Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover for the loss of an arm sustained by the plaintiff, an employee of the defendant, at the Rutherford Yards, near Harrisburg, Pennsylvania, on January 9, 1937. The case was tried before the court, and a jury which returned a verdict of $15,000 for the plaintiff on February 1, 1939. The defendant has moved for a new trial, and for judgment on the following points of law reserved at the trial:

"Tenth: Plaintiff has failed to prove that he was engaged in interstate transportation or work so closely related thereto as to be a part of it at the time of the injury and the verdict of the jury must be for the defendant.

"Eleventh: Under all the evidence in the case, the verdict of the jury must be for the defendant."

The essential facts follow: At the time of the accident the plaintiff was employed as a yard brakeman at the Rutherford Yards. The accident occurred while the plaintiff was working with a yard switching crew, consisting of an engineer, fireman, conductor, and the plaintiff brakeman. On the day of the accident, this crew backed the shifting locomotive, which they were using, from the thoroughfare track into the power house siding, attaching it to two cars on the siding. These cars, an empty coal car and a car containing ashes, were taken from the siding to the thoroughfare track. The locomotive with the cars attached was then backed west along the thoroughfare track, with the empty coal car in front, and the locomotive at the rear. During this operation, the plaintiff was riding on the empty coal car. When the cars reached a point west of the intersection of track No. 17 and the thoroughfare track, they were stopped on the thoroughfare track where plaintiff set the brakes. The locomotive was then disconnected and driven on the thoroughfare track to a point east of the intersection

with track No. 17. After setting the brakes on the cars which were left standing on the thoroughfare track, the plaintiff walked a short distance to track No. 17, where a loaded coal car and a tool car were standing. He climbed to the top of the tool car to release the brakes. In the meantime, the locomotive backed from the thoroughfare track on to track No. 17, and came into contact with the loaded coal car. This car pushed into the tool car on which the plaintiff was working, causing the plaintiff to fall under the coal car where his arm was caught and severed by the car wheels.

After the accident, the four cars which made up the draft upon which plaintiff was working were disposed of as follows: The car containing ashes, consigned from Rutherford, Pa., to O. H. Rhodes, Steelton, Pa., on January 9, 1937, left Rutherford on January 10, 1937, arriving at Steelton the same day. The empty coal car was placed under a coal dock within "20 or 30" minutes after the accident, and was filled with coal from a "crippled" Central Railroad of N. J. car. This car left Rutherford Yard with the coal on January 10, 1937, and arrived at Jersey City, N. J., on January 12, 1937. The coal carried by this car was originally loaded in West Virginia for shipment to Jersey City. The loaded coal car on track No. 17, which ran over plaintiff's arm, contained coal that had come from West Virginia into Pennsylvania, and had been spilled from a Baltimore & Ohio car near the Rutherford Yards. Prior to the accident, the spilled coal was loaded into the car in question, which went to Gettysburg, Pennsylvania, on January 13, 1937. The coal in this car had originally been consigned by a coal company from Consol, West Virginia, to Port Reading Piers, New Jersey. On December 11, 1936, the Coal Company was advised by the defendant that the coal had been damaged, and would not go forward to destination. The coal company filed a claim against the defendant for the value of the coal on December 22, 1936, and this claim was "approved for voucher", by the Reading Company on January 21, 1937. The tool car left Rutherford Yards on January 10, 1937, and arrived at its destination, Wayne Junction, Pennsylvania, on January 11, 1937.

■ The plaintiff testified that on the morning of the accident the conductor had given the crew instructions to place the empty coal car under the coal dock to be loaded with coal from a "crippled car". He also testified that the purpose of the shifting at the time of the accident was to place the empty coal car at the end of the draft so that it later could be placed under the coal dock. The defendant alleges that it was error to admit the plaintiff's testimony as to the conductor's instructions, on the ground that it was hearsay evidence, and cites Mirkowicz v. Reading Co., 3 Cir., 84 F.2d 537, in support of this contention.

In the Mirkowicz case, the trial court entered a nonsuit when it appeared that the only evidence of interstate commerce was a statement of a yard master that the car in question was destined for interstate transportation. The Circuit Court of Appeals in affirming the action of the trial court says, 84 F.2d at page 538: "Undoubtedly evidence of what work the appellant was doing and that it was done by direction of the employer, was, as we have said, admissible. The only way to prove it was by evidence of what the direction was. What the yard-master said was evidence of the direction given. The ruling, however, was that if he coupled his order of the work to be done with a declaration that it was interstate work, this statement was no evidence that the work was interstate work."

■ In the present case the statements of the conductor did not characterize the work as interstate, were not hearsay but clearly come within the language of the Mirkowicz case, supra, as evidence of what the plaintiff was doing, and that it was done by direction of the defendant company. This direction, when considered with the defendant's records, and the testimony of defendant's employees, was sufficient to warrant the submission of the question of plaintiff's employment in interstate commerce to the jury. These records and testimony showed that the empty coal car was placed under the coal dump within 20 or 30 minutes of the accident, that coal from outside the state was transferred to it from a "crippled" car, and that it left Rutherford Yard for New Jersey the next day.

■ "Interstate employment follows interstate transportation, and begins when a workman on the carrier's premises makes a forward move to serve in that traffic or employment." McKay v. Monongahela R. Co., 3 Cir., 44 F.2d 150, 151. Under this

rule, there was evidence to support a finding by the jury that the plaintiff was engaged in interstate commerce. There was evidence that the loaded coal car which severed plaintiff's arm contained an interstate shipment of coal which had not reached its final destination. Furthermore, there is evidence to support the plaintiff's contention that the shifting of the empty coal car to receive coal consigned to New Jersey from West Virginia was a forward move to serve interstate traffic. In short, whether the plaintiff was engaged in interstate commerce at the time of the accident was a question of fact to be determined by the jury.

The court has carefully examined the record, and considered all of the reasons for a new trial, and for judgment on the points reserved, and finds them without merit. The case was presented to the jury, fairly and fully, and the jury were warranted in their verdict which should not be disturbed.

It is ordered that the motion for a new trial, and for judgment for defendant on the points reserved, be and hereby are denied, and the Clerk is hereby directed to enter judgment on the verdict.