### Reese *v.* Pennsylvania Railroad Company, Appellant.

Argued April 23, 1935.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John R. Bredin,* with him *Dalzell, McFall & Pringle,* for appellant.

*Arthur L. McLaughlin, Jr.,* for appellee.

OPINION BY PARKER, J., July 18, 1935:

Anna Reese, widow of Charles J. Reese, was awarded compensation under the Workmen's Compensation Law for the benefit of herself and minor children by the referee and board, and now has a judgment of a court of common pleas. The Pennsylvania Railroad Company, on appeal to this court, seeks a reversal of the judgment on the grounds (1) that deceased was not acting in the course of his employment at the time of the accident, as he was not yet on the premises of the defendant where he was required to be by his employment; (2) that he disobeyed the positive orders of his employer; and (3) that if he was in the course of his

employment, he was engaged in interstate transportation.

We will state the facts bearing on the points in controversy as found by the referee and modified and affirmed by the board. For a long period, Charles J. Reese had been employed by the defendant company as an extra passenger fireman, subject to call when his services were required. He secured his assignments for work at the train dispatcher's office in the yards of the defendant company at Pittsburgh. On the afternoon of January 3, 1932, he called the dispatcher's office by telephone from his home near Altoona, Pennsylvania, and learned that he would have some employment that night. He proceeded by train, travelling on a pass, from Altoona to Pittsburgh where he arrived at 8:30 P. M. On arrival at the Pittsburgh Terminal, he proceeded out the tracks toward the dispatcher's office which was located opposite 28th Street and near Liberty Street. While the route taken by him was not the safest way to go from the station to the engine house, it was one used by railroad employees and no specific instructions had been issued prohibiting him from using that approach. When at a point about opposite 26th Street and something less than a thousand feet from the dispatcher's office, he was run over by a train and suffered an injury which was a contributing factor in causing his death on January 22, 1932. Reese was unable to explain exactly how he had been run down by a train and injured. At the time that Reese communicated with the crew dispatcher, he was informed that he would have an assignment that night and he replied that he would come over on the train which arrived at Pittsburgh at 8:30 P. M., but no definite assignment was given to him. The crew dispatcher with whom decedent talked testified he later "marked up" decedent for duty on an interstate train which would leave at 11:57 P. M. This fact was not communicated

to Reese prior to his injury, and the board found as a fact "that no assignment of work to decedent had been made." It was also found as a fact that the deceased, at the time of his injury, was not engaged in interstate commerce. There was evidence that a fireman was required to report for duty one and one-half hours before the departure of his train, during which time he prepared his engine for use and moved it to the passenger depot. As no definite assignment had been made to the deceased, he necessarily did not know the exact time that he would be required to report, and it was therefore natural for him to proceed at once from the station to the dispatcher's office for the purpose of receiving his orders.

(1) Was the deceased injured while in the course of his employment with the defendant company? The board has found as facts not only that the deceased, at the time of the accident, "was within the particular operating premises of the defendant with which his duties were connected," but also, more specifically, that the yard where his first duties would be performed extended from 24th Street to 33rd Street and that he was injured at a point on the right-of-way opposite 26th Street. If these findings are supported by the evidence, the question must be answered in the affirmative. "The word 'premises,' as appearing in the compensation act, does not include all property owned by the employer, but does embrace that used in connection with the actual place of work where the employer carries on the business in which the employee is engaged:" Meucci v. Gallatin Coal Co., 279 Pa. 184, 186, 123 A. 766. The testimony read in connection with the plan of the yards furnished at the hearing by the defendant company supports the findings. This portion of the premises of the railroad company, commonly known as yard, was the place where the engines were stored and where the fireman on a passenger train, the employment of the de-

ceased, was required to be for an hour and a half prior to the departure of his train. The testimony shows that during this time it was his duty to give attention to his engine and take it back through the yards to the Pittsburgh Terminal. No one would contend that, in this case, premises embraced all of the land and right-of-way of the railroad company in Pennsylvania, or even within the limits of the city of Pittsburgh, but it did include the place where the employee carried on the business assigned to him.

"In the absence of special circumstances, going to work or returning home from work does not constitute 'actual furtherance of the employer's business' ": Kerwin v. Susquehanna C. Co., 112 Pa. Superior Ct. 594, 596, 172 A. 24. However, when the employee enters that part of the property where his presence is required, he is engaged in the furtherance of the business of the employer even though he may not be performing the precise task which is the primary purpose of his employment or be at the precise bench, desk, or other location regularly occupied by him. So, one was held entitled to compensation under the state law who was injured on a sidewalk on a private street as she was about to enter her employer's store and start her day's work: Feeney v. N. Snellenburg & Co., 103 Pa. Superior Ct. 284, 157 A. 379. The same principle has been applied to employees using paths and stairs connected with the premises so as to be a part thereof as a means of approach to their work: Black v. Herman, 297 Pa. 230, 146 A. 550. There were at least three means of approach in common use by those engaged as the deceased was: (1) ride on a shifting engine from the station to the dispatcher's office; (2) walk eastward on the tracks; and (3) go out Liberty Street, which parallelled the tracks, to 26th Street and then cross the tracks to the office which was near the center of the right-of-way. Regardless of the course chosen, it was necessary to

pass over tracks of the company to get to the place of actual work. When Reese reached the yards in which he was to work, he was on the premises of the Pennsylvania Railroad Company, as that term is used in the compensation law.

It is urged by the appellant that the deceased came upon the premises about an hour before the time he was required to be there and that, for this reason, his employment had not started. In Horn v. Fitler Co., 115 Pa. Superior Ct. 188, 175 A. 440, we sustained a judgment for a claimant where he was upon the premises an hour and a quarter before the plant was to begin its day's operation. What is a reasonable time for the employee to be upon the premises prior to the beginning of his day's task is a relative one depending upon the circumstances of the case and cannot be measured by a definite number of minutes in all cases. Here, the employee had reported to his superior that he would take the first train to the Pittsburgh Terminal and then report at the premises for his assignment. This arrangement contemplated his reporting immediately upon his arrival in Pittsburgh, and he could not know in advance just how much time would be required, for the particular run he was to take had not been made known to him before the accident. We are of the opinion that the evidence supports this finding of the board. Such being the case, that finding is binding upon us.

(2) It is next urged that the employee, by approaching the premises over the tracks of the defendant company directly from the terminal and not coming by way of Liberty Street, violated a positive order of his employer and therefore cannot recover. A prime difficulty with this contention is that it is not supported by the evidence. On the contrary, it appeared that while some safety regulations had been made, known to the men generally, whereby it was suggested that the safer route be taken, there was not any rule prohibiting the men

from walking out the tracks. The train master in charge of engineers and firemen testified as follows: "There is no rule that I know of that prohibits the men from walking out. It is just a matter of safety. We ask them to go out Liberty Avenue. Q. And there isn't any order from the railroad company instructing them not to walk out that way? A. Not that I know of." This evidence was not contradicted. There is no merit in this contention.

(3) Finally, it is contended that the employee was engaged in interstate transportation and that the Federal Employers' Liability Act stands in the way of a recovery under the Pennsylvania Workmen's Compensation Act. In support of this proposition, the appellant depends upon the fact that prior to the accident the train dispatcher had assigned Reese to fire on an interstate train which would leave at 11:57 P. M. The board found: "There is no evidence, however, that this was more than a tentative assignment and it is clear that decedent had not been told of any definite assignment. We therefore, find as a fact, that no assignment of work to decedent had been made." The evidence supports this finding. Until decedent reported and "signed the register sheet," the designation was tentative and indicated merely an intention to have Reese take an interstate run. This feature of the case is ruled by Erie R. Co. v. Welsh, 242 U. S. 303, 37 S. C. Rep. 116. There the plaintiff had a judgment in the state courts and, on appeal, the defendant railroad company contended that the employee was engaged in interstate commerce and that it had been deprived of rights secured to it by the Federal Employers' Liability Act. The Erie Railroad Company was a carrier engaged in commerce between states. The employee was a yard conductor who acted under orders of a yard master to whom he applied for assignment and orders. He had, on the night in question, taken a car beyond the state limits

and then returned to the freight yards on an engine which, when it arrived near the yard master's office, slowed down to allow Welsh to alight and report for further orders, all previous orders having been executed. In attempting to alight from the engine, the employee was injured and subsequently died. It was also in evidence that the order Welsh would have received had he not been injured on his way to the yard master's office would have required him to immediately make up an interstate train. The Supreme Court held: "By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the [federal] act. Illinois C. R. Co. v. Behrens, 233 U. S. 473, 478, 58 L. ed. 1051, 1055, 34 Sup. Ct. Rep. 646, Ann. Cas. 1914C, 163, 10 N. C. C. A. 153." We cannot distinguish that case from the one we are considering for Reese certainly had completed his former task on a former day, and even though he was about to be assigned to an interstate trip, he had not yet received his orders.

It is further urged that the burden of proof was on claimant to show that her decedent was not engaged in interstate commerce, and the cases of Philadelphia & R. Ry. Co. v. Di Donato, 256 U. S. 327, 41 S. C. Rep. 516, and Philadelphia & R. Ry. Co. v. Polk, 256 U. S. 332, 41 S. C. Rep. 518, are relied upon. We have had occasion to consider the legal principles involved in the case of Elder v. Penna. R. R. Co., 118 Pa. Superior Ct. 137, 180 A. 183. All that the Supreme Court decided in those cases with relation to burden of proof was that, if there was an assertion of a claim or remedy growing out of an occurrence *in which there are constituents of interstate commerce,* the burden of explanation and avoidance is on him who asserts the claim. The rule

has only been extended to those cases in which there exist at the time elements of interstate commerce. In the case of the railroad fireman which we are now considering, his work might one day be in intrastate commerce and, on another trip, interstate commerce. The trip did not take on its characteristic until some move was made in performing the act to be done. Certainly the courts, either federal or state, have never gone so far as to hold that everyone claiming compensation from a railroad company which is engaged in both kinds of transportation is obliged to show affirmatively that he is not engaged in interstate commerce. In any event, the claimant here has shown the precise conditions that existed at the time. The deceased came to the yard without a definite assignment and without an order to proceed in interstate transportation, which brings the case precisely within the facts of Erie Railroad Co. v. Welsh, supra.

We are all of the opinion that the judgment should be affirmed.

Judgment affirmed.