Mazzuco, Appellant, *v.* Pennsylvania Railroad Company.

Argued April 20, 1936.

Before KELLER, P.

J., Cunningham, Baldrige, Stadtfeld, Parker, James, and Rhodes, JJ.

*Fred J. Jordan* and *Murray J. Jordan,* with them *P. V. Marino,* for appellant.

*Rufus S. Marriner,* with him *John F. Wiley,* of *Marriner & Wiley,* for appellee.

Opinion by Parker, J., July 10, 1936:

The court below reversed the Workmen's Compensation Board and denied the claimant compensation for the loss of the sight of an eye sustained while in the course of his employment with the defendant on the ground that at the time the injury was sustained claimant was engaged in interstate transportation. We are of the opinion that the case was correctly decided.

The facts are not in controversy. Judge Brownson in an opinion for the court below accurately stated the factual situation as follows: "The referee has found from sufficient evidence, as underlying facts, the following matters in substance, and the finding thereof the Board has approved: That the claimant was employed by the defendant railroad company as a laborer in the track gang on the Washington Division of the railroad; that the nature of the work done by this gang

on that day was repairing the line of this railroad which is used by trains in both interstate and intrastate transportation; that the section gang had been carried, under the direction of the foreman, from Canonsburg to the place of working, upon a hand car, 'which was used for the purpose of transporting men to and from their work;' that at about 3:30 P. M. the gang was preparing to return from their work to (Canonsburg) where they would be dismissed for the day, and for this purpose were using a small movable turntable in order that the hand car might be turned around and placed on the track in a position to be used, and it was while so using this turntable that the accident to the claimant happened. The work done by the gang on that day was described by the foreman as consisting of 'raising joints and lining up and straightening the railroad (eastbound track;) . . . . . . raising up low places in the track and straightening up the rails.' He testified, further, that his headquarters were at Canonsburg, at which point the men reported for work at 7:30 A. M. and were then taken to the place of work by a motor car (the referee called this vehicle a 'hand car';) and that the day's work of the gang was figured as commencing at the time when they left Canonsburg at 7:30 in the morning, and ending at the time when they would get back to Canonsburg at 4:00 o'clock in the evening. There was no contradiction of his testimony."

If when the accident occurred the claimant was engaged in interstate transportation the Pennsylvania Workmen's Compensation Law does not apply: Employers' Liability Act, April 22, 1908, c. 149, 45 U. S. C. A. §51. The character of the employment, whether interstate or intrastate is a matter of law: St. Louis, S. F. & T. R. Co. v. Seale, 229 U. S. 156, 33 S. Ct. 651; Phila. & R. Ry. Co. v. Hancock, 253 U. S. 284, 40 S. Ct. 512; and being a question of paramount federal law we are not bound by the deductions of the referee

or the board, but must draw our own conclusions from the evidence as to whether the claimant was engaged in interstate transportation: Martini v. Director Gen. of R. R., 77 Pa. Superior Ct. 529, 531.

The repair of tracks and bridges used indiscriminately in interstate and intrastate transportation is so intimately related to interstate transportation as to be a part of it: Pedersen v. Delaware L. & W. R. Co., 229 U. S. 146, 33 S. Ct. 648; 18 R. C. L. 855. In the case of Phila. & R. Ry. Co. v. Di Donato, 256 U. S. 327, 329, 41 S. Ct. 516, the Supreme Court went a step farther and held that a crossing watchman was employed in interstate transportation when flagging a train at a crossing over which both interstate and intrastate trains passed whether the particular train that was involved in the accident was interstate or intrastate transportation. Also see Brown v. Lehigh Valley R. R. Co., 121 Pa. Superior Ct. 380, 184 A. 290; Elder v. P. R. R. Co., 118 Pa. Superior Ct. 137, 180 A. 183.

In answer the appellant suggests that he had completed his work in so far as he was engaged in repairing tracks and had dissociated himself from interstate transportation as he was at the time of the accident engaged in placing on the track the motor car which was to be used in transporting him and other laborers back to Canonsburg. In support of his legal position he urges the rule set forth in Illinois Cent. R. R. Co. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, that the status of the employee is determined by the work that he is actually performing at the time, which rule we followed in Gasser v. C. R. R. of N. J., 112 Pa. Superior Ct. 420, 171 A. 97.

There are certain facts that are pertinent in this connection. The employees engaged in this work, as well as the claimant, reported to headquarters at Canonsburg at 7:30 A. M. and were then taken by motor car to the particular place where they were to repair the

tracks and at the close of their day's work they were brought back to headquarters at 4 P. M. "The day's work of the gang was figured as commencing when they left Canonsburg at 7:30 in the morning and ending at the time when they would get back to Canonsburg at 4 o'clock in the evening." When the claimant was being transported from Canonsburg headquarters, where he reported to his superior, to the place where he was to perform the actual task of the day and while he was being brought back to headquarters in the evening he was engaged in interstate transportation or in work so closely related thereto as to be a part thereof just as he was when he was actually driving a spike or jacking up a rail: O'Donnell v. Director General, 273 Pa. 375, 117 A. 82; Knowles v. N. Y., N. H. & H. R. Co., 223 N. Y. 516. In the O'Donnell case an engineman, pursuant to orders, was moving an engine to a point where it was to be used to haul an interstate train and he was then to take charge of another engine attached to a train containing interstate shipments. In moving the first engine an accident occurred and the engineman was killed. It was held that the employee was engaged in interstate transportation and compensation was denied him. It was there said quoting Koons v. P. & R. Ry. Co., 271 Pa. 468, 470, 114 A. 262: "Employment follows interstate transportation and begins when the workman on a carrier's premises makes a forward move to serve in that traffic or employment and ends only after he has completely dissociated himself therefrom."

The case of Erie R. R. Co. v. Winfield, 244 U. S. 170, 37 S. Ct. 556 is decisive of the issue here presented. There an employee of an interstate railway carrier in charge of a switch engine was killed while leaving the yard after his day's work which had included employment in both interstate and intrastate commerce. It was held that he was engaged in interstate transpor-

tation at the time of the accident and the employee was denied compensation under the workmen's compensation act of New Jersey. In the case we are considering the facts are even clearer for the claimant, in the performance of his actual labor, was engaged in interstate commerce during the entire day.

The appellant in his brief confuses two lines of cases which have no application here. First there are those cases in which the employee changes from time to time from one class of transportation to the other and the employments are separable of which Illinois C. R. Co. v. Behrens, supra, is an example and where the character of the employment is determined by what the employee is doing at the time of the accident. There a fireman employed by an interstate carrier on a switch engine was killed while aiding in the work of moving several cars, all loaded with intrastate freight, between two points in the same city and it was held that he was engaged in intrastate transportation at the time of the injury.

The other line of cases is where the employment is not so closely related to interstate commerce as to be a part thereof. There the distinguishing criterion is the nearness or remoteness of the relation of the act in question to interstate transportation. Typical of that line of cases is Chicago & E. I. R. Co. v. I. C. of Illinois, 284 U. S. 296, 52 S. Ct. 151, where the employee was injured while oiling an electric motor which was to be used for hoisting coal which was to be employed in moving interstate freight and it was held that he was not engaged in interstate transportation. We cite that case as it specifically overrules Erie R. Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, and Erie R. Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454. Also see Gasser v. Central R. R. of N. J., supra (p. 425).

The first line of cases is not applicable for the reason that the claimant did not change his employment from

time to time during the day and for the further reason that in determining the character of an employment on the way to and from work and during the noon hour, the interstate commerce transportation characteristic predominates: Elder v. P. R. R. Co., supra. The second line of cases referred to are not applicable for here the movements of the claimant during the entire day were immediately concerned with the one task of repairing tracks which was here interstate transportation. As is accurately pointed out by the learned judge of the court below the claimant was from the time he left headquarters at Canonsburg until he returned in the evening specifically and exclusively engaged in the business of repairing tracks. The movement to and from the place where the repairs were made was a necessary and usual incident of the employment. The method adopted by the carrier for accomplishing this work was to provide a motor car to move the employee from place to place. The transportation furnished was primarily for the benefit of the employer. The motor car itself as well as the turntable were instrumentalities provided by the employer and used by the employees for the specific purpose of enabling the section hands to render more efficient service in interstate transportation by avoiding a waste of time that would occur if they walked to and from the points where the repairs were to be made. Under such circumstances the movements to and from work on the motor car were so intimately related to interstate commerce as to be a part thereof. See Komar v. P. R. R. Co., 121 Pa. Superior Ct. 385, 184 A. 293.

The conclusions that we have reached are in line with the well established rule of the appellate courts of this state dealing with compensation cases that where an employee as part of his contract of employment is conveyed to and from the premises where the work is to be done and such transportation is for the benefit of the

employer, the employee is during such time engaged in the course of his employment. Dunn v. Trego, 279 Pa. 518, 124 A. 174; Bock v. Reading, 120 Pa. Superior Ct. 468, 471, 182 A. 732.

The judgment of the court below is affirmed.