Velia, Appellant, *v.* Reading Company.

200

Argued November 19, 1936.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Roy Pressman,* for appellant.

*Algernon R. Clapp,* with him *Harold Cooper Roberts* and *T. R. White,* for appellee.

OPINION BY PARKER, J., December 11, 1936:

The sole question involved in this workmen's compensation case is whether claimant's decedent was engaged in interstate transportation at the time he was killed. The referee found that he was not and awarded the widow compensation. The board affirmed the referee, but, on appeal to the court of common pleas, judgment was entered for the defendant. We are all of the opinion that the court below correctly held that the deceased was at the time engaged in interstate transportation.

Both referee and board found as facts that Angelo Velia was employed on March 1, 1935 and for some time prior thereto by the Reading Company as sub-foreman of a track maintenance gang in the Belmont Yard of that company, that on February 28, 1935 he was engaged in making repairs to Baker Track in the Belmont Yard, that the repairs were not completed on that day and Velia was instructed to assist in the completion of the repairs to the track on the following day, and that Baker Track and all other tracks in Belmont Yard were used for the purpose of shifting and making up trains used in both interstate and intrastate transportation. At about 6:45 A. M. on March 1, 1935, Velia came on the premises of defendant and assisted a fellow workman in preparing and moving a handcar in order that the same might be taken to the point where the repair work was in progress. At 6:55 A. M. Velia was struck and killed by a train drawn by a switch engine a short distance southeast of the tool house, while the Baker Track was located to the northeast. The reason for his presence at the point of accident was not explained. However, it was admitted that decedent met his death on the premises of defendant. As

Belmont Yard was the place of employment of decedent there can be no doubt the accident which resulted in death occurred after Velia reached his place of employment at about the time he was required to be there.

If, when the accident occurred, the deceased was engaged in interstate transportation, the Pennsylvania Workmen's Compensation Law does not apply: Employers' Liability Act, April 22, 1908, c. 149, 45 USCA §51. The character of the employment, whether interstate or intrastate, is a matter of law: *St. Louis S. F. & T. R. Co. v. Seale*, 229 U. S. 156, 33 S. Ct. 651; *Phila. & R. Ry. Co. v. Hancock*, 253 U. S. 284, 40 S. Ct. 512; and being a question of paramount federal law, we are not bound by the deductions of the referee or the board, but must draw our own conclusions from the evidence as to whether the deceased was engaged in interstate transportation: *Martini v. Director General of R. R.*, 77 Pa. Superior Ct. 529, 531.

That an employee who is engaged in repairing a bridge or track used indiscriminately in interstate and intrastate transportation is, when so engaged, in an interstate employment is not now open to question: *Pedersen v. Delaware L. & W. R. Co.*, 229 U. S. 146, 33 S. Ct. 648; *Phila. & R. Ry. Co. v. Di Donato*, 256 U. S. 327, 41 S. Ct. 516; *Mazzuco v. Pa. R. R. Co.*, 122 Pa. Superior Ct. 293, 186 A. 255.

When the employee arrived at the tool house and joined fellow employees in loading and moving the handcar used in moving the tools that were required in the repair work, he was engaged in the performance of a part of his work in interstate transportation. The work done was in connection with the repairs of tracks and essentially a part of the larger task. It is of no importance that the record does not show that specific instructions were given to the sub-foreman to assist in the movement of the handcar. We may assume that the employees, and particularly a sub-foreman, as part

of their duties were required to assist in transporting the tools that were needed in the work to be done on that day.

The deceased was a sub-foreman and as such his field of labor was Belmont Yard, the tracks of which were used indiscriminately in both kinds of transportation, and when he arrived at the tool house at about the time his labors were to begin, he was employed by defendant in matters directly related to interstate transportation and would so have been even if he had not assisted in the movement of the handcar. This follows because the employee had previously been engaged in interstate commerce and had been directed to continue his employment in interstate commerce on the day he was killed. When he entered upon his employment, that employment was interstate transportation. "Employment follows interstate transportation and begins when the workman, on a carrier's premises, makes a forward move to serve in that traffic or employment and ends only after he has completely dissociated himself therefrom": *Koons v. Phila. & R. Ry. Co.*, 271 Pa. 468, 470, 114 A. 262. Also see *O'Donnell v. Director General*, 273 Pa. 375, 117 A. 82.

The case of *Erie R. R. Co. v. Winfield*, 244 U. S. 170, 37 S. Ct. 556 is conclusive on this point, the Supreme Court having there said: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment ...... Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so, when he was leaving the yard at the time of the injury, his employment was in both."

Not only had Velia been engaged in repairing tracks on February 28, but he was directed by his foreman to

engage in the same work the following morning, which task, as we have seen, was a part of interstate transportation.

It is important to observe that the employment of Velia was such that his duties were not separable even though the tracks might at times be used by intrastate cars. A recognition of this principle answers the argument of appellant and distinguishes the cases on which she relies. This distinction was pointed out by the United States Supreme Court in the Di Donato case and followed by this court in the case of *Elder v. Pa. R. R. Co.,* 118 Pa. Superior Ct. 137, 180 A. 183. The appellant in this case relied upon a line of cases where the duties of the employee required him at times to engage exclusively in each kind of commerce, and the duties of the employment were separable. Examples of this line of cases are *Erie R. R. Co. v. Welsh,* 242 U. S. 303, 37 S. Ct. 116; *Illinois C. R. R. Co. v. Behrens,* 233 U. S. 473, 34 S. Ct. 646; and *Reese v. Pa. R. R. Co.,* 118 Pa. Superior Ct. 112, 180 A. 188. In the Welsh and Reese cases the employee was at times engaged in interstate transportation and at other times in intrastate transportation. In both cases the previous employment was ended and the employee, in one case a conductor and in the other an engineer, had not been assigned to a new task when the accident occurred. In the Behrens case the employee, a fireman, was at times engaged in each kind of transportation, but at the time he was injured was engaged exclusively in hauling an intrastate shipment. In all three of these cases the duties were separable. In the instant case just as in the Di Donato case the duties were not separable.

Appellant also relies upon the case of *Elder v. Pa. R. R. Co.,* supra. In that case an engineer was at times engaged in each kind of transportation, but on the day in question he was in the yard of his employer on his way to an office where he would receive his orders for

the day. No task had been assigned to him. In the case we are considering, the employee had not only been engaged in a task involving interstate transportation, and that task had not been completed, but he had also received specific instructions to continue the work on the following day, the time when he was killed.

It is clear to us that Velia when injured was engaged in interstate transportation and his widow is therefore not entitled to compensation under the Pennsylvania Workmen's Compensation Act. Her remedy, if any, is under the Federal Employers' Liability Act. The principle here involved is the same as in the Mazzuco case, the only difference being that in that case the employee was concerned about a handcar intended to transport him from his place of work at the close of the day, while here the injury occurred at the beginning of the day's work. As the United States Supreme Court indicated in the Winfield case, the same principle applies in going to work as when returning from work, and while on the premises of the employer.

Judgment affirmed.