Mease et al. *v.* Reading Company, Appellant.

Argued March 9, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER and JAMES, JJ.

*John T. Brady,* for appellant.

*Solomon Hurwitz,* with him *Macey E. Klein,* for appellees.

438

OPINION BY PARKER, J., April 15, 1937:

This is an action brought under the Workmen's Compensation Law to recover compensation for the death of claimant's husband, Levi H. Mease. The sole question involved here is whether the deceased was engaged in interstate transportation at the time he was killed. The referee and the board, the fact finding bodies, held that Mease was not so engaged and awarded compensation, and on appeal to a court of common pleas the award was affirmed and judgment was entered for the claimant.

The facts are not in dispute and the question as to whether deceased was engaged in interstate transportation at the time of the accident is therefore one of law: *Velia v. Reading Co.*, 124 Pa. Superior Ct. 199, 202, 187 A. 495; *St. Louis S. F. & T. R. Co. v. Seale*, 229 U. S. 156, 33 S. Ct. 651; *Martini v. Director General*, 77 Pa. Superior Ct. 529, 531.

From August 20, 1933, to October 13, 1933, the date of death, Mease had been employed as a fireman by the defendant railroad company and during all that time was assigned to an interchange crew whose duties were to transfer trains or drafts of cars in both directions between the yards of the Pennsylvania Railroad Company in Harrisburg and the yards of the Reading Company at Rutherford, about five miles east of Harrisburg. He was required to be ready to assist in moving an engine at 6:30 A. M. on October 13, 1933. At about 6:15 A. M., he entered the premises where he was employed by a gate leading to the roundhouse and was crossing the first railroad track when he was struck by an engine and instantly killed. It was his duty on arriving at the roundhouse to register, check his watch, and consult a black board where he would find the number of the engine to which he would be assigned and receive his orders. These orders, of course, had not been received by him when he was killed.

The last work performed by Mease on October 12, which had been completed, consisted of assisting in the movement of a draft of cars from the Pennsylvania yard to the Reading yard and that draft of cars included those which were being transported between different states. In the early hours of October 13, the defendant company had received from the Pennsylvania Railroad Company at Harrisburg a train of cars a number of which were being transported between states. Several hours prior to 6:30 A. M., employees of the defendant who were there charged with the responsibility of directing train movements had determined that engine No. 1514 would be assigned to the crew of which deceased had been a member and that the first work to be performed when the crew reported for duty should be to take a light engine from the roundhouse at Rutherford, go to Harrisburg yard and move the train of cars that had been left at Harrisburg from there to Rutherford.

An important fact is described in a stipulation which is part of the record and is as follows: "Between August 20, 1933, the date Mr. Mease was assigned to the Interchange crew, and October 13, 1933, the date on which he was killed, the crew of which he was a member made several movements between the Harrisburg Yard of the Pennsylvania Railroad Company and the Rutherford Yards of Reading Company where all cars were Intrastate, and that in the same period several similar movements were made in the reverse direction between the Rutherford Yards of Reading Company and the Harrisburg Yard of the Pennsylvania Railroad Company. This, however, does not mean that the work of the crew on any one day was wholly Intrastate but that only on occasions, prior in point of time to the date of the accident, certain trips were made which were wholly intrastate."

If Mease at the time of the accident was engaged in

interstate transportation, our state workmen's compensation law is not applicable: Employers' Liability Act, April 22, 1908, c. 149, 45 USCA §51. The liabilities and obligations of interstate railway carriers to compensate their employees for personal injuries suffered by such employees while engaged in interstate transportation "are regulated both inclusively and exclusively by the Federal Employers' Liability Act. Congress having fully covered the subject no room exists for state regulation," even in respect of injuries occurring without negligence as to which the federal act provides no remedy: *New York Cent. R. R. Co. v. Winfield*, 244 U. S. 147, 37 S. Ct. 546. We are all of the opinion that while the case we are considering is near the border line the employee at the time was not participating in the actual movement of interstate traffic or in work so closely related thereto as to be practically a part thereof.

At the outset it is to be noted that a member of a shifting crew does not ordinarily belong to that class of employees of railroad carriers whose service is so related to an instrumentality of transportation as to be practically inseparable from the use of that instrumentality in moving traffic, such as a flagman at a crossing over which interstate and intrastate traffic passes (*Phila. & Reading R. Co. v. Di Donato*, 256 U. S. 327, 41 S. Ct. 516), or one engaged in repairing tracks or bridges (*Pedersen v. D., L., & W. R. R. Co.*, 229 U. S. 146, 33 S. Ct. 648), or a railroad policeman (*Elder v. Penna. R. R. Co.*, 118 Pa. Superior Ct. 137, 180 A. 183). A fireman on a shifting crew may at times be engaged exclusively in either interstate or intrastate transportation: *Ill. Cent. R. R. v. Behrens*, 233 U. S. 473, 34 S. Ct. 646. On the question involved the decisions of the Supreme Court of the United States are controlling: *Mayers v. Union R. R. Co.*, 256 Pa. 474, 100 A. 967.

Two decisions of the United States Supreme Court, *Erie R. R. v. Winfield,* 244 U. S. 170, 173, 37 S. Ct. 556, and *Erie R. R. Co. v. Welsh,* 242 U. S. 303, 37 S. Ct. 116, furnish the basis of the respective arguments of the parties and are guide posts to direct us. The claimant and the court below relied on the Welsh case and the carrier on the Winfield case. The facts in the case we are considering vary in important details from each of those cases and place this case near the border line separating the two classes of transportation, interstate and intrastate.

In *Erie R. R. v. Winfield,* supra, an employee of an interstate railway carrier in charge of a switch engine was killed while leaving the yard after his day's work which had included employment in both interstate and intrastate transportation. It was held that the Federal Employers' Liability Act applied to the exclusion of a state workmen's compensation law. Mr. Justice VAN DEVANTER, speaking for the court, there said: "Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so, when he was leaving the yard at the time of the injury, his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is, for present purposes, of no importance."

In the Welsh case, the claimant was a yard conductor employed on a night shift and was engaged in performing miscellaneous services in the way of shifting cars and breaking up and making up trains under orders of a yard master and had to apply frequently to the latter for such orders. At times he was engaged exclusively in interstate transportation and at other

times exclusively in intrastate transportation and sometimes in both. He had taken from one yard to another yard a freight car loaded with merchandise destined to a point without the state and a caboose which, so far as appears, was not to go beyond the limits of the state. After placing the freight car on a siding he took the caboose a short distance farther and placed it upon another siding. He then took the engine to a water plug, took on water and returned to the vicinity of the yard master's office. It was there said: "By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. *Illinois C. R. Co. v. Behrens,* 233 U. S. 473, 478, 58 L. ed. 1051, 1055, 34 Sup. Ct. Rep. 646, Ann. Cas. 1914C, 163, 10 N. C. C. A. 153." It was also held that the trial court had properly submitted to the jury a question as to whether the series of acts the employee had last performed was properly to be regarded as a succession of separate tasks or as a single and individual task. The law there declared was predicated upon the assumption that the employee had dissociated himself from interstate transportation.

The facts in the case we are considering differ from those in the Winfield case in important particulars. In that case the employee had during the day on which he was injured engaged in interstate and intrastate transportation and was leaving the premises when injured. The act of leaving the yard was an incident to his employment for the whole day during which he had been engaged in both classes of employment. His leaving and while yet on the premises was an incident to the interstate employment even though it may also have been incident to intrastate work. If during the day he had been exclusively engaged in intrastate trans-

portation, the act of leaving the yard would have been incident solely to that class of traffic and the Federal Employers' Liability Act would have had no application.

When Mease left the premises of the defendant the night before the accident he departed from the course of his employment and ceased to be engaged in interstate transportation or any other employment under the defendant. When he entered the premises and before he came to the roundhouse he was in the course of his employment, but he had not made any forward move in interstate transportation nor had he received any instructions which would identify his employment with interstate commerce. The mere expectation that he would presently be called upon to perform a task in interstate transportation would not be sufficient to bring his employment within the federal act: *Erie R. R. Co. v. Welsh,* supra; *Illinois C. R. Co. v. Behrens,* supra, p. 478. Unless it appeared that there were involved in the occurrence constituents of interstate commerce, the burden was not on the claimant to prove that her decedent was not engaged in interstate transportation: *Peak v. Penna. R. R. Co.,* 121 Pa. Superior Ct. 373, 184 A. 295.

The statement in the Winfield case with reference to the character of the employment of a workman when coming to work and its similarity to the situation when leaving work has no application here. The employee was killed before he began his actual work. He had not received any instructions as to what he was to do and had not been performing either class of service exclusively. A different situation arises when an employee is engaged exclusively in one class of work or has been instructed to perform a specified task. Then there is a class of service with which the approach may be identified and of which it partakes. Consequently, in the case of *Velia v. Reading Co.,* supra, we held that

where an employee before coming to work had been instructed to engage at the beginning of his work on the following day in a task involving interstate transportation, then the employee after entering the premises was engaged in matters so closely related to interstate transportation as to be a part thereof.

Following the case of *Reese v. Penna. R. R. Co.,* 118 Pa. Superior Ct. 112, 180 A. 188, where the facts were substantially the same as here, we hold that where an employee, who is at times engaged exclusively in interstate transportation and at other times exclusively in intrastate transportation, is injured after coming upon the premises and before he has reached the point where he performs his actual work and without having received any instructions as to the class of transportation to which he will be assigned, the Federal Employers' Liability Act does not apply.

Judgment affirmed.