Argued October 24, 1939.
We agree with the referee, the board, and the court below that the claimant's decedent was engaged in interstate transportation at the time he was killed and that the federal Employers' Liability Act controls the liability of the defendant carrier:N.Y. Central R. Co. v. Winfield, 244 U.S. 147, 37 S. Ct. 546. Otherwise she would be entitled to workmen's compensation under the Pennsylvania statute. The parties entered into a stipulation setting forth the facts so that the only question involved is one of law: Martini v. Director General, 77 Pa. Super. 529.
We will recite the essential facts. The carrier operated daily a scheduled train between Mount Carmel and Mauch Chunk, Pennsylvania. The train carried both interstate and intrastate passengers, baggage and mail. The defendant company was likewise engaged generally in interstate and intrastate transportation on an extensive scale. The train in question, which consisted of a motor car and trailer, did not leave this state. The equipment used on this trip remained in the railroad yards at Mount Carmel over night each day and was used exclusively on that run. Its motive power was supplied by a gas-electric engine located in the head end of the motor car. This train carried each day from Mauch Chunk to Mount Carmel three locked mail pouches which were destined to points on the defendant's lines in Pennsylvania and which originated at Jersey City. These pouches were transported pursuant to schedules previously made and in effect when the accident to which we will later refer occurred. Under like circumstances this train regularly carried to Mauch Chunk mail which originated in Pennsylvania, the destination of which was outside this state, all pursuant to pre-arranged schedules. *Page 11 
These two cars were left each night on a siding within two hundred feet of defendant's station at Mount Carmel. During that time it was the duty of George W. Miller, husband of claimant, to clean and wash the train, supply it with ice and water, recharge its batteries for operation of the gas-electric engine, and fill the radiator of the engine with water. While engaged in such work on the night of July 13 and the morning of July 14, 1937, Miller was shot and killed.
That Miller had some connection with interstate transportation is not open to argument, but we are bound to further inquire whether deceased was engaged in work so closely related to interstate transportation as to be practically a part of it:Shanks v. Delaware, L. W.R. Co., 239 U.S. 556, 36 S. Ct. 188. Recognizing the trend of federal and state courts to consider the benevolent purposes of workmen's compensation statutes and, where possible, give workmen the advantage of this legislation, it is our aim to apply a liberal policy in determining the remoteness of the relation of the work being done to interstate transportation: Gasser v. Central R.R. of N.J., 112 Pa. Super. 420,425, 426, 171 A. 97. Nevertheless, by too liberal a construction in the case of one applying for the compensation provided for by the state statute, a principle may be established which militates against those employees who seek relief under the federal law.
If the claimant is to be awarded compensation it must be because the work of the decedent so remotely affected interstate commerce that for practical purposes it was not a part of it. As remoteness is a relative term we are compelled to rely on concrete illustrations rather than definition in order to determine where the line is to be drawn.
The United States Supreme Court held that the requisite employment in interstate transportation existed where a car repairer was replacing a draw bar in a car then in use in such transportation (N.Y., N.H. *Page 12 H.R. Co. v. Walsh, 223 U.S. 1, 32 S. Ct. 169, 171); where a fireman was walking ahead of and piloting a locomotive which was to be attached to an interstate train (Norfolk W.R. Co. v.Earnest, 229 U.S. 114, 33 S. Ct. 654); where a workman about to repair a bridge was carrying to the bridge bolts needed in his work (Pederson v. Delaware, L. W.R. Co., 229 U.S. 146,33 S. Ct. 648). Also, see St. Louis S.F. T.R. Co. v. Seale,229 U.S. 156, 33 S. Ct. 651; North Carolina R. Co. v. Zachary,232 U.S. 248, 34 S. Ct. 305.
This court applied the same measure where a railroad policeman was employed to drive trespassers from tracks of a railroad engaged at the time and place of injury in both types of transportation (Elder v. Penna. R.R. Co., 118 Pa. Super. 137,180 A. 183); where a watchman was employed to tend a crossing over which both types of transportation passed (Brown v.Lehigh V.R.R. Co., 121 Pa. Super. 380, 184 A. 290; Mahonv. L. W. Val. R.R. Co., 131 Pa. Super. 44, 198 A. 681); where a laborer in a track gang employed on the day of accident in repairing tracks used by trains in both types of transportation was engaged at the time in turning a motor car or speeder which, by direction of the employer, he was about to use to return from work to his headquarters (Mazzuco v. Penna. R.R.Co., 122 Pa. Super. 293, 186 A. 255); where the employee was preparing a hand car to take him to his place of work where he had been and was to be engaged in repairing tracks (Velia v.Reading Co., 124 Pa. Super. 199, 187 A. 495); where the employee at a classification yard at which the two types of shipments were sorted was on his way to work (Mason v. ReadingCo., 129 Pa. Super. 289, 195 A. 754); where a preparer had been engaged in preparing a locomotive assigned to service in interstate commerce and had just delivered it to an outbound track (Backes v. Penna. R.R. Co., 132 Pa. Super. 29,200 A. 181).
It was held that the requisite employment in interstate *Page 13 
transportation did not exist where an employee was digging coal that was to be used in the company's locomotives moving in interstate commerce (Delaware, L. W.R. Co. v. Yurkonis,238 U.S. 439, 35 S. Ct. 902); where an employee in a machine shop operated for repairing locomotives used in both types of transportation was engaged in relocating an overhead countershaft(Shanks v. D., L. W.R. Co., supra); where claimant was firing a locomotive used to heat depot and carriages used in both kinds of transportation (Chicago N.W. Ry. Co. v. Bolle, 284 U.S. 74,52 S. Ct. 59); where the injured employee was oiling an electric motor furnishing power to hoist coal into a chute to be taken therefrom and used by locomotives principally employed in moving interstate freight (Chicago E.I.R. Co. v. I.C. of Ill.,284 U.S. 296, 52 S. Ct. 151); where an extra fireman was called for service and was on the premises but had not yet been assigned to a task in either class of transportation (Reese v. Penna. R.R.Co., 118 Pa. Super. 112, 180 A. 188; Mease v. Reading Co.,126 Pa. Super. 436, 191 A. 402); where the employee was performing the equivalent of janitor service at a depot where both kinds of transportation were involved (Gasser v. CentralR.R. of N.J., supra).
Since the cars upon which Miller was working regularly transported interstate and intrastate shipments and the services in the respective classes of transportation were not separable, the interstate transportation feature predominates and is controlling: Komar v. Penna. R.R. Co., 121 Pa. Super. 385,389, 184 A. 293; Phila. R. Ry. Co. v. DiDonato, 256 U.S. 327,41 S. Ct. 516.
It follows that the cars were used exclusively on a train which operated each day in interstate transportation. By a pre-arranged schedule and arrangement with the postal authorities the carrier undertook to transport and did transport this mail. It would seem *Page 14 
to be self-evident that any employee engaged in the actual movement of the train would be engaged in interstate transportation. Here the cars were idle for a few hours during the night, but they were not removed from interstate service for these cars, and these alone, were used exclusively in that service. The situation is to be distinguished from that shown in cases where, as a locomotive engaged in shifting, the facilities are used one day or hour in one class of service and then in the other. Here there was no alternation of service.
"Employment follows interstate transportation and begins when the workman, on a carrier's premises, makes a forward move to serve in that traffic or employment and ends only after he has completely dissociated himself therefrom": Koons v. Phila. Reading Ry. Co., 271 Pa. 468, 470, 114 A. 262; Velia v. ReadingCo., supra (p. 203). Consequently, we held that an employee who was killed while "preparing" for service a locomotive which had been assigned to an interstate run was then engaged in interstate transportation: Backes v. Penna. R.R. Co., 132 Pa. Super. 29,200 A. 181. That case rules the present one. The facts in the case of New York, N.H. H.R. Co. v. Walsh, supra, where the employee was engaged in repairing a drawbar in a car then in use in interstate transportation, are strikingly similar to the facts in this case. Miller had been assigned to and was engaged in a task intimately and closely related to interstate transportation and his service must be taken to be a part of that service.
It is suggested by the appellant that the present case should be distinguished by the fact that the actual movement of the train was within the state and that the train did not take on its interstate character until an interstate shipment was actually placed on the cars. That contention is without merit and was answered by Mr. Justice CARDOZO in Libertucci v. New York C.R.R.Co., 252 N.Y. 182, 169 N.E. 132, a case on all fours *Page 15 
with this one. It was there contended that mail intended for a train might not have arrived and that there then would have been no interstate service by the train. That Justice said: "Possibilities such as these do not affect the inferences that follow from the normal course of business. The normal course of business was such that parcel post, on its way at the time of the accident from a point without the state, was due to arrive at Ravena before this engine could go out. The normal course of business meant besides that, being parcel post, the package would be transferred to any waiting train available and dispatched without delay. The only train available that day or any other was train 1007, to which this engine was assigned. In such circumstances, the care of the engine was not `a matter of indifference,' so far as interstate commerce was concerned.Pedersen v. Delaware, L. W.R. Co., 229 U.S. 146, 151,33 S. Ct. 648, 57 L. Ed. 1125, Ann Cas. 1914c, 153. It was preparation for that commerce in fulfillment of existing needs. The distinction is illusory between fitting an engine for the carriage of a package that is already in the yard, and fitting it to carry a package presently to arrive. In each case some unlooked for casualty, such as the destruction of the package, may make the work abortive. The reasonable exigencies of commerce in the light of presently existing facts must fix the nature of the service, the field of its utility. Baltimore O.R. Co. v. Darling
(C.C.A.) 3 F.2d 987."
Judgment affirmed.