Opinion by
 

 Baldrige, J.,
 

 An award obtained by the plaintiff before the workmen’s compensation authorities for the death of her husband was sustained by the court below.
 

 Our primary inquiry is whether or not the decedent, at the time of his fatal injury, was engaged in interstate
 
 *589
 
 commerce. There is the additional question respecting the burden of proof. Was it on the claimant, under the record before us, to show that the deceased was engaged in intrastate commerce when the accident occurred?
 

 The facts, which are not in dispute, are as follows. The decedent, William C. Niblett, .employed by the defendant as a brakeman, worked in the 52d Street, Philadelphia, classification yards as a dropper and a car rider. Toward the western end of these, yards there is a slight elevation known as the “hump” and leading down therefrom in an easterly direction is a main or “ladder track” from which branch a number of classification tracks. Freight cars are pushed by an engine to the top of the hump where they are disconnected and allowed to coast down by gravity on the ladder track and branch off onto the classification track to which they are destined.
 

 In the early morning of February 11, 1937, Niblett was engaged in riding freight cars down the hump to No. 6 classification track. In the neighborhood of 1:30 a. m. he was on a Great Northern car in which there was a wooden reel shipped from Haddonfield, N. J., and consigned to Economy, Pa. This car stalled on the ladder track about 500 feet west of the switch leading to No. 6 classification track. A Canadian National car, also destined for No. 6 track, was dispatched from the hump in an unsuccessful attempt to move it. Three additional cars were sent down the hump for the same purpose but that plan proved ineffective.
 

 Niblett, as head brakeman, remained in charge of these 5 cars. E. H. Estill, assistant yard master, ordered an engine attached to 35 cars to push the stalled 5 cars into the proper position on No. 6 track. The deceased and Estill went into a nearby shanty to keep warm where they remained until the arrival of the train, which was about 40 minutes. Approximately 2:30 a. m., and immediately prior to the time the engine
 
 *590
 
 started to push the stalled cars and before they had reached their proper position on No. 6 track, Niblett went to the north side of the draft and Estill went to the south side, both walking eastward toward the head end. This was the last time Niblett was seen alive. Several minutes thereafter the engine and the connected cars bumped the 5 car draft onto No. 6 classification track. About 4:30 a. m. Niblett’s dead body was found between the rails and underneath the west end truck of the Canadian National car, which was the second car from the end of the 5 car draft. The back of his head was torn away and he had a large hole in the right side of his jaw.
 

 The board found as a fact that the work decedent had been assigned to prior to his death was completed a few minutes after 2:20 a. m., stating as follows: “Defendant not having met the burden of proof by showing decedent met his death prior to his 5 car draft being properly on track No. 6, it is our opinion that decedent ‘had completely disassociated himself’ from his interstate employment prior to such time.”
 

 If this-accident occurred when the deceased was engaged in interstate commerce, redress should have been sought under the Federal Employers’ Liability Act, 45 U. S. C. A. Sec. 51 et seq.; Second Employers’ Liability Cases, 223 U. S. 1, 55, 32 S. Ct. 169, 56 L. Ed. 327;
 
 Velia v. Reading Co.,
 
 124 Pa. Superior Ct. 199, 202, 187 A. 495. If the accident occurred while the decedent was engaged in intrastate commerce this case comes within our state workmen’s compensation laws:
 
 Jordan v. Erie Railroad Company,
 
 146 Pa. Superior Ct. 134, 22 A. 2d 116.
 

 The facts not being in dispute the character of the employment, whether interstate or intrastate, resolves itself into a question of law:
 
 Phila. & R. Ry.
 
 Co.
 
 v. Hancock,
 
 253 U. S. 284, 40 S. Ct. 512. We are not bound by the deductions made by the referee or the board. We must draw our own conclusions in determining the kind of commerce deceased was engaged in at the time
 
 *591
 
 of the accident:
 
 Martini v. Director Gen. of R. R., 77
 
 Pa. Superior Ct. 529, 531;
 
 Mazzuco v. Penna. Railroad Co., 122
 
 Pa. Superior Ct. 293, 295, 186 A. 255;
 
 Mease v. Reading Co.,
 
 126 Pa. Superior Ct. 436, 438, 191 A. 402, certiorari denied, 302 U. S. 705, 58 S. Ct. 25, 82 L. Ed. 545.
 

 Niblett, in classifying cars, might have been, at a given time, engaged either in interstate or intrastate commerce. His service accordingly was separable. The work in which he was engaged at or about the time of this unfortunate accident determines the question of jurisdiction:
 
 Illinois C. R. Co. v. Behrens,
 
 233 U. S. 473, 34 S. Ct. 646;
 
 Brown v. Lehigh Valley R. R. Co.,
 
 121 Pa. Superior Ct. 380, 384, 184 A. 290;
 
 Slizik v. Pgh.
 
 &
 
 Lake Erie R. Co.,
 
 140 Pa. Superior Ct. 283, 13 A. 2d 911.
 

 There can be no dispute that at the time of the placing of this Great Northern car and the four others on the classification track, Niblett was clearly engaged in interstate commerce. “Employment follows interstate transportation and begins when the workman, on a carrier’s premises, makes a forward move to serve in that traffic or employment and ends only after he has completely dissociated himself therefrom.”
 
 Koons v. Phila. & Reading Ry. Co.,
 
 271 Pa. 468, 470, 114 A. 262. If we assume that Ni'blett’s acts were both intrastate and interstate and so mingled as not to be severable the interstate feature predominates and by it the questioned act must be judged:
 
 Patterson v. Penna. Railroad,
 
 284 Pa. 577, 131 A. 484, certiorari denied 270 U. S. 649, 46 S. Ct. 349, 70 L. Ed. 780;
 
 Dunkell Estate v. Penna. Railroad Co.,
 
 106 Pa. Superior Ct. 356, 360, 163 A. 70;
 
 Backes v. Penna. Railroad Co.,
 
 132 Pa. Superior Ct. 29, 34, 200 A. 181;
 
 Jordan v. Erie Railroad Co.,
 
 supra.
 

 While the exact time and manner of Niblett’s death are not shown, as no one saw him killed, we think the circumstances indicate quite persuasively that at the time of his death he was engaged in interstate commerce.
 
 *592
 
 We have no facts that would reasonably justify the conclusion that he met his death after completing, and entirely “dissociating himself” from, his interstate duties. There was testimony that had Niblett finished his work on interstate transportation and started back to the hump for another car it would be impossible to ascertain, before he was actually assigned to a car, whether it would be an interstate or intrastate transaction.
 

 In view of the evidence showing that the deceased was engaged in work on interstate cars when last seen alive the conclusion of the compensation authorities that the burden of proof was on the defendant to show he was engaged in interstate work was clearly erroneous. It appearing that the decedent’s last employment was in interstate service, it was incumbent upon the claimant to show that at the time of his death he was actually engaged in intrastate service:
 
 Scanlon v. Payne,
 
 271 Pa. 391, 393, 394, 114 A. 493. Compare
 
 Peak v. Penna. Railroad Co.,
 
 121 Pa. Superior Ct. 373, 380, 184 A. 295 and
 
 Komar v. Penna. Railroad Co.,
 
 121 Pa. Superior Ct. 385, 389, 184 A. 293. She was unable to meet this burden.
 

 We cannot agree with the compensation board that
 
 Salkeld v. Penna. Railroad Co.,
 
 142 Pa. Superior Ct. 78, 15 A. 2d 501, controls this case as the facts are readily distinguishable. There the deceased was employed as a brakeman on a train that ran between Pitcairn and 43d Street in the City of Pittsburgh. Although the train operated locally, some of the cars, which ultimately made up the train, contained shipments less than carload lots from points outside of Pennsylvania. The deceased was killed shortly after entering the yard before he began his duties and when his train was being made up by a switch crew of which he was not a member. We held in such circumstances the deceased was not engaged in interstate commerce.
 

 Judgment is reversed and now entered for defendant.